■ JACK SILVERSTEIN, Doing Business as ALBRO MEN'S WEAR & SPORTS SHOP, Respondent, v CHARTERED BANK HONG KONG, Defendant, and MARINE MIDLAND BANK, Appellant.—Judgment, Supreme Court, New York County, entered May 5, 1976, after trial before the court without a jury, in favor of the plaintiff in the sum of $15,402, inclusive of interest, costs and disbursements, unanimously reversed, on the law and on the facts, and vacated and the complaint dismissed, with $60 costs and disbursements to appellant. The defendant-appellant Marine Midland Bank, from its branch in New York City, transferred $12,500 of the plaintiff's money to the named defendant, Chartered Bank of Hong Kong, in Hong Kong with instructions to pay it out when explicit instructions had been complied with. The Hong Kong bank paid without the requirements having been met. The Hong Kong bank was neither served in this action nor did it appear. The underlying question on

the trial—whether the Hong Kong bank was the agent of the plaintiff or Marine Midland—was not expressly answered by trial term. The overwhelming weight of evidence establishes that the Hong Kong bank was the plaintiff's agent. From Marine Midland's standpoint, the simplest way for it to have sent money to Hong Kong was to its own branch which it maintained there rather than to a bank with which it had no correspondent relationship and which involved going through another bank in New York City. But the plaintiff wanted the Hong Kong bank to pay the money to one Vine, who, he thought and told Marine Midland, was the chairman of the Chartered Bank of Hong Kong and haste was essential because the plaintiff's transaction allowed only one or two hours for the money to be sent to Hong Kong to be available for Vine. For that reason, personal to the plaintiff, reflecting no desire of Marine Midland, the plaintiff authorized Marine Midland's telex to the Chartered Bank of Hong Kong directing that it pay the money to Vine upon fulfillment of the stated conditions. That the plaintiff selected the Hong Kong bank is confirmed by a letter from his attorneys to Marine Midland: "On January 15, 1973, Mr. Silverstein instructed Mr. Graf of your Chambers Street office to forward $12,500 to the Chartered Bank of Hong Kong". Marine Midland cannot be held liable to the plaintiff for the acts of the plaintiff's agent *(Myers v Brown,* 142 App Div 658, affd 206 NY 718). The Trial Term's decision seems based solely on a misinterpretation of testimony of Marine Midland's branch manager. The court stated: "He testified that in the normal course of transactions such as this, if instructions are not followed, then the customer is reimbursed by the bank for what he has lost by reason of the non-compliance". The court apparently construed this to be a concession of liability. It overlooked that this pertained only to "the normal course of transactions", since, in such instances, when the instructions had not been met, the receiving bank would not pay out the money, but remit it to the sending bank which would reimburse the customer. The testimony was not relevant to this abnormal transaction where the receiving bank paid out the money in violation of its instructions. Concur—Lupiano, J. P., Capozzoli, Lane, Markewich and Lynch, JJ.